UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WALTER G. KRAWZA,                                Civ. No. 13-3044(JRT/JSM)

      Plaintiff,                                REPORT AND RECOMMENDATION

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION,

      Defendant.

This matter came before the undersigned on defendant's Motion to Dismiss. [Docket No. 6].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B), Local Rule 72.1, and the Amended Administrative Order issued by Chief Judge Michael Davis on November 6, 2013 [Docket No. 4].  Pursuant to this Court's Order of January 7, 2014 [Docket No. 14], this matter was decided on the parties' written submissions.

Plaintiff seeks to invalidate the foreclosure of the mortgage on his home.  Plaintiff asserts five claims against defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"): (1) quiet title to determine adverse claims under Minn. Stat. §599.01; (2) declaratory judgment; (3) slander of title; (4) damages for loss of possession of his property; and (5) damages for conversion of his personal property.

For the reasons below, the Court recommends that Freddie Mac's Motion to Dismiss be granted and plaintiff's claims be dismissed with prejudice.

I.     **BACKGROUND**

The facts bearing on defendant's Motion to Dismiss are as follows.  On August 6, 2007, plaintiff executed a note ("Note") and mortgage ("Mortgage") to Homeservices

Lending, LLC Series A, d/b/a Edina Realty Mortgage ("Homeservices Lending, LLC") for property located in Dakota County, Minnesota ("Property).   Complaint, ¶4 [Docket No. 1], Ex. 1 ( Mortgage).

Plaintiff alleged that Freddie Mac acquired an interest in the Mortgage on September 13, 2007, before commencement of the foreclosure by advertisement, but the assignment was not recorded.   Id., ¶¶6, 27.   In support of this claim, plaintiff attached a screen shot from Freddie Mac's public website stating that Freddie Mac was the owner of his Mortgage and acquired it on September 13, 2007.   Id., ¶6, Ex. 2 (screen shot dated March 13, 2013).

Plaintiff pled that Freddie Mac invests in mortgage loans originated by sellers and servicers such as Wells Fargo, Freddie Mac's Seller/Servicer Guides and Custodial Agreement govern the investment relationship, and the Custodial Agreement requires that the Seller/Servicer deliver to the Custodian a duly prepared and executed assignment of the security instrument from the Seller/Servicer to Freddie Mac in recordable form, but not recorded.   Id., ¶¶7, 8, Ex. 4 (blank form Custodial Agreement). According to plaintiff, Freddie Mac is in possession of an unrecorded assignment of the mortgage.   Id., ¶9.

On August 3, 2007, Homeservices Lending, LLC assigned the Mortgage to Wells Fargo through an assignment signed by Robin Dreyer and Michael Sinclair as Vice Presidents of Loan Documentation.   Id., ¶19, Ex. 5 (Assignment of Mortgage).   The Assignment was recorded in the Dakota County Recorder's office on September 17, 2007.   Id.

On June 1, 2010, China Brown, as Vice President of Loan Documentation for Wells Fargo, executed a Notice of Pendency and Power of Attorney to Foreclose, authorizing the Reiter & Schiller law firm to foreclose on the Property by advertisement. Id., ¶20, Ex. 6 (Notice of Pendency and Power of Attorney to Foreclose).  The Notice of Pendency and Power of Attorney was recorded in the Dakota County Recorder's office on June 8, 2010.   Id.   Plaintiff contended that Brown has been identified as an unauthorized "robo-signer" by McDonnell Property Analytics, which was hired by the Southern Essex District Registry of Deeds, Salem, Massachusetts to audit its files.  Id., ¶29; Ex. 11 ("Forensic Examination of Assignments of Mortgage Recorded During 2010 in the Essex Southern District Registry of Deeds" showing the name "China Brown" on a list of robo-signers).   Plaintiff asserted that Brown had no factual knowledge of the contents of the Notice of Pendency and Power of Attorney she signed, and therefore the Notice of Pendency and Power of Attorney is void.  Id., ¶33.

A sheriff's sale of the Property was conducted on January 5, 2011.  Id., ¶21. Reiter & Schiller appeared at the sale and bid the amount allegedly due on the Note, $155,068.29.  Id., ¶21, Ex. 7 (Sheriff's Certificate of Sale and Foreclosure Record).

On February 23, 2011, Wells Fargo assigned its interest in the Property to Freddie Mac through a quit claim deed.  Id., ¶22.  Thomas Reiter, a named partner at Reiter & Schiller, signed the quit claim deed as attorney-in-fact for Wells Fargo.  Id., Ex. 8 (quit claim deed).

Plaintiff alleged the foreclosure was void because Freddie Mac, not Wells Fargo, was the mortgagee of record at the time of the foreclosure.  Id., ¶27.  Plaintiff further alleged that the foreclosure was void because: (1) Freddie Mac failed to record

assignments of the Mortgage before commencing the foreclosure; (2) the published Notice of Foreclosure did not list Freddie Mac as an assignee in violation of Minn. Stat. §580.04; (3) there is no "of record" power of attorney from Freddie Mac, the "actual mortgagee" to Reiter authorizing Reiter to conduct the foreclosure; (4) the Notice of Pendency and Power of Attorney was signed by an individual (Brown) lacking in factual knowledge of its content. Id., ¶¶30-33.

On or about October 17, 2011, Freddie Mac began an eviction action to remove plaintiff from the Property. Id., ¶34, Ex. 12 (eviction complaint).  The complaint alleged that the Property had been sold at a sheriff's sale, which plaintiff denied on the ground that the sale was improper. Id., ¶36.  On December 7, 2011, the state district court issued a Writ of Recovery and Order to Vacate, requiring plaintiff to vacate the Property. Id., ¶37, Ex. 13 (Writ of Recovery and Order to Vacate).  Freddie Mac, through its counsel, notified plaintiff in writing that he had until December 12, 2011, at 1:00 p.m. to remove his possessions from the Property, and failing to do so, the items would be placed in storage and he would be charged for the storage costs. Id., 38, Ex. 14 (letter dated December 9, 2011 to plaintiff from Wilford, Geske & Cook).  Plaintiff received a letter dated January 12, 2012, from Wilford, Geske & Cook stating that the statutory 28-day storage period for plaintiff's personal possessions was expiring and that if plaintiff wanted his personal possessions he had to contact Barry Cavalancia, a broker, no later than January 19, 2012. Id., ¶39, Ex. 15 (letter from Wilford, Geske & Cook to plaintiff).  Plaintiff claimed that he made arrangements to retrieve his possessions, but the broker cancelled the appointment and told plaintiff that he would be given access over a 24-hour period before disposing of the property. Id.  Plaintiff contended that Freddie Mac

and its agents refused his demands for the return of his possessions, beginning on December 12, 2011 and continuing to the date of the Complaint, November 6, 2013. Id., ¶40.

Plaintiff pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq. This Count alleged that in a quiet title action, defendant has the burden of proof, and consequently, defendant must prove its interest in the Property by a preponderance of evidence. Id., ¶¶43-52.

Count II sought a declaratory judgment pursuant to Minn. Stat. §551.01 et. seq. that "Freddie Mac's interest in the Property and/or Mortgage is void and that the foreclosure is void" and that "[p]laintiff remains the fee owner of the [P]roperty." Id., ¶¶54, 55.

Count III alleged slander of title based on defendant's drafting and recording of documents[1] that plaintiff claimed were false and not executed by legally authorized persons, which evidenced a reckless disregard for the truth and that created a cloud on plaintiff's title to the Property. Id., ¶¶57-59.

Count IV alleged damages for loss of possession of the Property based on Freddie Mac's eviction of plaintiff from the Property. Id., ¶¶62-64.

---

[1]     The Complaint does not identify these documents, but the Court assumed plaintiff was referring to the Assignment of Mortgage signed by Dreyer and Sinclair, the Notice of Pendency and Power of Attorney signed by Brown, and the quit claim deed signed by Reiter.

Count V alleged damages from the conversion of plaintiff's personal property based on Freddie Mac's alleged deprivation of his use and possession of this property. Id., ¶¶67, 68.

As relief, plaintiff sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the Mortgage, Sheriff's Certificate of Sale, Assignment of Mortgage, Notice of Pendency and Power of Attorney, and quit claim deed were void; an order that plaintiff is the fee owner of the Property; and money damages for Freddie Mac's retention of plaintiff's personal property.  Complaint, Prayer for Relief, ¶¶I-IV.

Freddie Mac moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the suit was barred by the preclusion doctrines of res judicata and collateral estoppel because plaintiff's claims were raised and resolved in previous litigation involving the same Property in Cartier v. Wells Fargo Bank, N.A., Civ. No. 11-2168(JRT/AJB), 2012 WL 244994 (D. Minn. June 27, 2012), aff'd, Cartier v. Wells Fargo Bank, N.A., 2013 WL 6153235 (8th Cir. Nov. 25, 2013). Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."), pp. 7-13 [Docket No. 7].

Second, Freddie Mac contended that plaintiff's suit failed because it rested on speculative contentions regarding a secret, unrecorded assignment of the Mortgage from Wells Fargo to Freddie Mac, and that Dreyer, Sinclair, Brown and Reiter lacked authority to sign the Assignment and foreclosure-related documents.  Id., pp. 15-16.

Freddie Mac noted that similar claims have been rejected time and again by the Eighth

Circuit in cases brought by plaintiff's former attorney, William Butler.[2]

According to Freddie Mac, plaintiff's "missing assignment" theory was based on a

claim that Freddie Mac failed to record an assignment of mortgage it received from

Wells Fargo according to the Custodial Agreement.  Id., p. 15.  But plaintiff has no

standing to sue under such an agreement because he is not a party to or beneficiary of

the agreement.  Id.  Further, even if plaintiff had standing, the Custodial Agreement did

not require the actual and present assignment from the servicer to Freddie Mac; it

merely required the servicer to prepare an assignment in recordable form that could be

recorded when and if the mortgage was assigned to Freddie Mac.  Id., p. 16.

Additionally, the Servicer Guide contemplated that loan servicers would initiate

foreclosure proceedings and then transfer title to the property to Freddie Mac after the

foreclosure was complete.  Def.'s Mem., Appx., pp. 1-2 [Docket No. 9-1].[3]  Here, Wells

---

[2]    Butler was suspended from practice before the United States Court of Appeals for the Eighth Circuit on December 26, 2013.  In re Butler, No. 13–9013 (8th Cir. Dec. 26, 2013).  As a result, Butler was automatically suspended from practice before the District Court, effective December 26, 2013. See D. Minn. L.R. 83.6(b)(1); In re Butler, Misc. No. 13–49(MJD), ECF No. 10 (D. Minn. Jan. 14, 2014).  Attorney Susanne M. Glaser entered a Notice of Appearance [Docket No. 15], and submitted the Memorandum in Opposition to Freddie Mac's Motion to Dismiss. Glaser later moved to withdraw. [Docket No. 20].  This Court granted that motion.  Order, April 18, 2014 [Docket No. 26].  Plaintiff is proceeding pro se.  Notice of Pro Se Appearance by Walter G. Krawza [Docket No. 22].

[3]    As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted));

Fargo transferred the Property to Freddie Mac after the foreclosure sale in compliance with the Seller/Servicer Guide.

Freddie Mac further contended that plaintiff's allegation that the foreclosure violated Minn. Stat. §580.05 by failing to list Freddie Mac as an assignee was "simply wrong" because the mortgage had not been assigned to Freddie Mac prior to the foreclosure sale. Def.'s Mem., p. 17. For the same reason, plaintiff's contention that the foreclosure was void because there was no "of record" power of attorney from Freddie Mac to Reiter & Schiller failed, as Well Fargo, not Freddie Mac, was the mortgagee at the time of the foreclosure. Id.

Freddie Mac did not address the merits of plaintiff's slander of title or declaratory judgment claims, except to note that these claims were based on the same theory underlying the quiet title claim and "therefore fall along with that claim. . . ." Defendant's Reply Memorandum, p. 4 [Docket No. 18].

As to plaintiff's claim for damages, Freddie Mac argued that plaintiff's claim for damages arising out of the loss of the Property failed as a matter of law because his underlying claims regarding the foreclosure failed. Id., p. 18. As for his claim for conversion of his personal property, Freddie Mac asserted that plaintiff never alleged that he attempted to retrieve his property in the 24-hour period permitted by the broker. Id., p. 19. Therefore, it appeared that plaintiff's own inaction led to the deprivation of his personal property. Id.

---

see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697, n. 4 (8th Cir. 2003). Pursuant to these standards, the Court has considered the excerpt from the Seller/Servicer's Guide included in Freddie Mac's appendix as it was referenced in plaintiff's Complaint.

For the reasons set forth below, the Court concludes that plaintiff failed to state a claim for relief and therefore, defendant's motion should be granted.

## II.    LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).   "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

For the reasons set forth below, the Court concludes that plaintiff failed to state a claim for relief and therefore, defendant's motion should be granted.

III.   **DISCUSSION**[4]

A.   **Quiet Title**

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. §559.01.

In response to Freddie Mac's motion to dismiss the quiet title claim, plaintiff contended that under Minnesota law all he had to plead was that he possessed the Property and defendant had a claim adverse to his.[5]   Plaintiff's Memorandum in

---

[4]      As this Court has determined that plaintiff's underlying claims fail on the merits, it need not decide whether is claims are barred by issue and claim preclusion, as Freddie Mac contended.  See Simmer v. HSBC Bank USA, N.A., Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *5 (D. Minn. Dec. 3, 2013) (declining to reach a determination on res judicata or estoppel because the underlying claims fail on the merits); Schumacher v. Federal Home Loan Mortg. Corp., Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013) (stating "defendants argue that this action is barred by res judicata. . .and that this lawsuit is nothing more than a brazen attempt to relitigate Schumacher's claim.  The court need not reach the res judicata determination, however, as the underlying claims. . .fail on the merits.).  However, as other courts determined on facts and arguments virtually identical to those presented in the instant case, there is no question that plaintiff's suit is barred based on the preclusion doctrines of collateral estoppel and res judicata.   See Welch v. Citimortgage, Inc., Civ. No. 13-1388 (JRT/JJK), 2014 WL 1048522, at *8 (D. Minn. March 18, 2014) (Order adopting Report and Recommendation) (res judicata barred second suit regarding same property alleging same causes of action); Appel v. Federal Home Loan Mortg. Corp., Civ. No. 13-1671 (DSD/JJK), 2014 WL 896730, at *5 (D. Minn. March 6, 2014) (Order adopting Report and Recommendation) (subsequent suit on same property alleging same causes of action barred by claim and issue preclusion); Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094, 2013 WL 2251001, at *5-6 (D. Minn. May 22, 2013) (same); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4-5 (D. Minn. May 17, 2013) (same), aff'd, --Fed. Appx., 2014 WL 1386689 (8th Cir. April 10, 2014); Butler v. Fed. Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *6 (D. Minn. May 15, 2013) (same).

[5]      The Minnesota Court of Appeals has rejected plaintiff's argument that a quiet title claim premised solely on allegations that he was in possession of the Property and

Opposition to Motion to Dismiss ("Pl. Opp. Mem."), pp. 9-15 [Docket No. 16].  According to plaintiff, once these elements are pled, the burden shifted to defendant to prove the validity of its claims.  Id., pp. 10-14.  Moreover, plaintiff maintained the Federal Rules of Civil Procedure do not alter the burden of proof of his state law quiet title claim.  Id., pp. 13-15.

Plaintiff further asserted that his quiet title claim was viable because the Custodial Agreement required Freddie Mac to take possession of the securitized notes and mortgages before the closing of the trust and if Freddie Mac cannot prove that it did so, its claim is void.  Id., p. 18.  In the alternative, plaintiff maintained that even if Freddie Mac had followed the requirements of the Custodial Agreement, the foreclosure

defendant had a claim adverse to him states a cause of action under Minnesota law.  In a case similar to the instant suit and relying on the standards for pleading articulated in Twombly, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid.  Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss.  We disagree.
>
> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." See Hebert [v. City of Fifty Lakes, 744 N.W.2d 226, 229 (Minn.2008)]. Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013).

was void because Freddie Mac failed to record the assignment of mortgage before the commencement of the foreclosure by advertisement as required by Minn. Stat. § 580.02, is not listed as an assignee on the Notice of Foreclosure, and did not give Reiter & Schiller power of attorney to prosecute the foreclosure. <u>Id.</u>, pp. 16-18.

Plaintiff's arguments fail for many reasons.

First, plaintiff's argument that the Court should apply the Minnesota state court pleading standards to his quiet title claim is meritless.  Plaintiff's former counsel Butler has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." <u>Karnatcheva v. J.P. Morgan Chase Bank, N.A.</u>, 704 F.3d 545 548 (8th Cir. 2013); <u>see also</u> <u>Dunbar v. Wells Fargo Bank, N.A.</u>, 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting <u>Karnatcheva</u>); <u>Novak v. JP Morgan Chase Bank</u>, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting <u>Karnatcheva</u>); <u>Gharwal v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in <u>Karnatcheva</u> rejected the "burden of proof" argument in a quiet title action advocated by plaintiff.  704 F.3d at 548.  As the court explained in <u>Gharwal</u>:

> <u>Karnatcheva</u> rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim.  <u>Karnatcheva</u>, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; <u>Karnatcheva</u> is binding precedent, and this Court must apply it.  The Court notes, however, that although he was addressing a different issue, plaintiff's

counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." Welk v GMAC Mortg., LLC, 850 F. Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013). Here, plaintiff's quiet title claims are based only on conclusory statements and speculation, but no facts. The claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiff's quiet title claim applying the standards governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Second, mere allegations of plaintiff's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief. See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

The documents referenced in and attached to the Complaint show an unbroken chain of title documented through a recorded Assignment of Mortgage from

Homeservices Lending, LLC to Wells Fargo and from Wells Fargo to Freddie Mac via a quit claim deed.  Complaint, Ex. 5 (September 17, 2007, Assignment of Mortgage), 7 (Sheriff's Certificate of Sale and Foreclosure Record), 8 (quit claim deed).  The Sheriff's Certificate of Sale is prima facie evidence that Wells Fargo complied with all legal requirements regarding the foreclosure and that the foreclosure and sale were proper. Minn. Stat. §580.19.

The only "factual" support for plaintiff's claim that there was an unrecorded assignment of his mortgage from Wells Fargo to Freddie Mac before the foreclosure is a screen shot dated March 3, 2013, attached to an affidavit of Butler's legal secretary Jessica Block, and language taken from Freddie Mac's Custodial Agreement. Complaint, ¶6, Ex. 2.  The screen shot does not identify plaintiff, the Mortgage or the Property.  Id.  However, Block stated under oath that the screen shot reflects information she obtained after entering plaintiff's Property information.  Id. Nevertheless, even assuming that this screen shot did refer to the Property, all it says is that Freddie Mac is the "owner" of the Mortgage and "acquired" the Mortgage on September 13, 2007.  This does not mean that Wells Fargo actually assigned legal interest in the Mortgage to Freddie Mac in 2007 or that Freddie Mac no longer held legal title to the Mortgage in 2007.  As the Supreme Court of Minnesota recognized in Jackson v. Mortgage Elec. Registration Sys., Inc., it is common for one party to hold legal title to a mortgage on behalf of another party who has "equitable ownership" of the mortgage.  770 N.W.2d 487, 499-501 (Minn. 2009).  For example, mortgage servicers typically hold legal title to the mortgage on behalf of the equitable owner of the mortgage, usually the holder of the promissory note secured by the mortgage.  "Only

assignments of legal title of the security instrument must be recorded to in order to commence a foreclosure by advertisement." Id. at 501.   Notably, the screen shot attached to the Complaint states that the property owner "may be eligible for the Home Affordable Refinance Program (HARP) if your loan was acquired by Freddie Mac on or before May 31, 2009," directs property owners to contact their lenders for help with their mortgages, and states "[y]our lender, the company to which you make your mortgage payments (also referred to as a mortgage servicer) can help you determine if you are eligible for the [Making Home Affordable program]."   Complaint, Ex. 2 (emphasis added).   Therefore, this screen shot does not allow the Court to draw any reasonable inference that Freddie Mac became the owner of the legal title to plaintiff's Mortgage on September 13, 2007, i.e. the holder of the mortgage deed.   See Contreras v. Federal Home Loan Mortg. Corp., Civ. No. 13-894 (JNE/JJK), 2014 WL 538735, at *5 (D. Minn. Feb. 11, 2014) (Order adopting Report and Recommendation) (rejecting screen shot from Freddie Mac website stating "[o]ur records show that Freddie Mac is the owner of your mortgage and it was acquired on November 20, 2007" as basis for inferring that plaintiffs' mortgage had been assigned before foreclosure in 2012); Hood v. Federal Home Loan Mortg. Corp., Civ. No. 13-1068(DSD/JSM), 2014 WL 1371916, at *8 (D. Minn. April 8, 2014) (Order adopting Report and Recommendation) (finding that screen shot stating that "Freddie Mac is the owner of your mortgage and it was acquired on July 14, 2005," was insufficient to allow the Court to draw a reasonable inference that MERS assigned legal title of the mortgage to Freddie Mac in 2005); Yang v. Federal Home Loan Mortg. Corp., Civ. No. 13-846 (JNE/JSM), 2014 WL 258641, at *9 (D. Minn. Jan. 23, 2014) (Order adopting Report and Recommendation) ("Plaintiff's reliance on

the Freddie Mac screen shot . . . purporting to state that Freddie Mac owned 'your mortgage' and acquired the mortgage on May 23, 2007, does not render plaintiffs' allegations that there was an unrecorded assignment of the mortgage from WAMU to Freddie Mac any less speculative" and finding that the screen shot did not allow a reasonable inference that WAMU had conveyed legal title to the mortgage in May, 2007) (citing <u>Jackson</u>, 770 N.W.2d 499-501).

As for the language relied upon by plaintiff from the Custodial Agreement – "[t]he Seller/Servicer must deliver to the Custodian a duly prepared and executed assignment of the security instrument from Seller/Servicer to Freddie Mac in recordable form but not recorded" – this Court has no basis for assuming that the language even applies to plaintiff or the Mortgage in this case.   The Custodial Agreement attached to the Complaint (Ex. 4) is a blank form.   <u>See</u> <u>Contreras</u>, 2014 WL 538735, at *5 (D. Minn. Feb. 11, 2014) (Order adopting Report and Recommendation) ("But the Custodial Agreement that Plaintiffs reference, as attached to their Complaint . . . appears to be a blank, unexecuted form contract that 'has nothing to do with [Plaintiffs'] loan or mortgage[:] [i]t is not an actual contract; it is an undated and unexecuted form, and none of its blanks are filled in.' <u>Gharwal</u>, 2013 WL 4838904, at *5.").

However, even if this language from the Custodial Agreement did govern plaintiff's Mortgage, it does not create a plausible inference that an unrecorded assignment from Wells Fargo to Freddie Mac actually occurred in 2007 as alleged by plaintiff.   <u>See</u>, <u>e.g.</u>, <u>Hood</u>, 2014 WL 1371916, at *8 (rejecting argument that the same language in a Custodial Agreement was proof that a pre-foreclosure assignment of a mortgage to Freddie Mac actually occurred); <u>Guse v. Federal Nat'l. Mortg. Ass'n.</u>, Civ.

17

No. 13-800 (PJS/JSM), 2014 WL 538631, at *8 (D. Minn. Feb. 11, 2014 (Order adopting Report and Recommendation) ("[T]he language relied upon by plaintiffs from the Custodial Agreement and Fannie Mae Seller/Servicer Guides also do not provide a plausible inference that an assignment to Fannie Mae actually occurred prior to the foreclosure.  Neither document requires an actual and present assignment from the servicer to Fannie Mae.  Rather, they simply require the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Fannie Mae.") (citations omitted); Willhite v. Federal Nat'l Mortg. Ass'n., Civ. No. 13-910 (ADM/JSM), 2014 WL 510376, at *7-8 (D. Minn. Feb. 7, 2014) (Order adopting Report and Recommendation) (rejecting argument that language in a Fannie Mae Seller/Servicer contract supported plaintiff's "unrecorded assignment" claim and further noting that even if there was a breach of the Seller/Servicer contract, plaintiff lacked standing to sue under the contract); Richter v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) (dismissing the quiet title claim, and stating "[s]imply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case.  Plaintiffs' allegations do not rise above speculation."); Cheng Lee v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, at *2 n.4 (D. Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae.  This conclusory allegation is insufficient.").  In other words, the Custodial Agreement does not require an actual and present assignment from the servicer to Freddie Mac.  Rather, it simply

requires the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Freddie Mac.

Third, setting aside these insurmountable obstacles, the Seller/Servicer Guide is not for the benefit of any borrower, but is an agreement between Freddie Mac and unknown entities.  Thus, even if Wells Fargo was a party to the contract and breached its obligations under the contract, that failure would be for Freddie Mac, not plaintiff, to pursue.  Consequently, plaintiff has no standing to raise this issue.  <u>Segura v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, *3 (D. Minn. June 17, 2013) (D. Minn. June 17, 2013) ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative.  The Guide is, at best, a contract between Fannie Mae and its servicers.  It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower.  The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities.  Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not the Seguras, to prosecute."); <u>Welk</u>, 2013 WL 2155463, at *3 ("[the] 'Guide' about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers.  It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-vis the borrower.  So even if Wells Fargo failed to comply with its purported obligations under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute.")

Fourth, plaintiff's conclusory claim that "documents" were "not executed by legally authorized persons," (Complaint, ¶57), "do[es] not hold up to even the slightest

scrutiny." <u>Simmer</u>, 2013 WL 6244710, at *3 (plaintiff's allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); <u>Segura</u>, 2013 WL 3034096, at *2 (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing <u>Mine v. Federal Home Loan Mortg. Corp.</u>, Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013)); <u>Welk</u>, 2013 WL 2155463, at *4 ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations.").

Finally, even if there was any truth to plaintiff's speculative statements about the lack of signing authority of Dreyer and Sinclair (as to the August 3, 2007, Assignment of Mortgage), Brown[6] (as to the June 8, 2010, Notice of Pendency and Power of Attorney),

---

[6]     The Court also rejects as meritless plaintiff's claim that the Notice of Pendency and Power of Attorney was invalid because Brown "robo-signed" the document. Complaint, ¶¶20, 29. There is no factual support for the allegation that Brown "robo-signed" the Notice of Pendency and Power of Attorney at issue in this case. The fact that her name appears on a list in Southern Essex District Register of Deeds is irrelevant to any issue in this case. Similarly, the statement that Brown signed the document without knowledge of its contents is utterly without factual support. <u>See Pope</u>, 2013 WL 2251001, at *3 ("Mr. Butler has insisted for more than two years that the individual named in this and many other complaints, a Ms. China Brown, lacked legal authority to sign on behalf of Wells Fargo. He has yet to produce any evidence in support of this speculative assertion."); <u>Portillo v. HSBC Mortg. Servs., Inc.</u>, Civ. No. 13-

or Reiter (as to the February 23, 2011 quit claim deed), plaintiff suffered no injury in fact as a result and, therefore lacks standing to pursue a quiet title claim on this basis.  See Quale v. Aurora Loan Servs., LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the Assignment of Mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); Forseth v. Bank of Am., N.A., Civ. No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these

---

2370 (DWF/JSM), 2014 WL 1431394, at *2 (D. Minn. April 14, 2014) (rejecting claim that because the individual who signed a Power of Attorney was identified as a "robo-signer" on a list in the Southern Essex District Register of Deeds the individual lacked signing authority as "meritless," lacking in appropriate factual support and "irrelevant to any issue in this case."); Wolff v. Bank of New York Mellon, Civ. No. 13-2175(PJS/JSM), --F. Supp.2d--, 2014 WL 641510, at *12, n.5 (D. Minn. Feb. 19, 2014) (a claim that an individual whose name appeared on a list in the Southern Essex Register of Deed as a "robo-signer" "does not create a 'plausible inference' that he did 'robo-signed' the document."); Robinson v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-1868(JNE/JSM), 2014 WL 258644, at *9 (D. Minn. Jan. 23, 2014) (same).

individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue    claims.") (citations omitted); Kaylor v. Bank of Am., N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); Stinson v. U.S. Bank, N.A., Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); Greene v. Home Loan Servs., Inc., Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement.  Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

For all of these reasons, plaintiff's quiet title claim fails and should be dismissed.

**B.**   **Slander of Title**

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes,

615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).  To plead malice, a plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [ ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").  The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.  Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).  Additionally, plaintiff must establish that he relied on the alleged false statement.  See Welk, 850 F. Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiff alleged no facts from which this Court could infer that Freddie Mac made a false statement, acted maliciously or that plaintiff suffered any pecuniary loss from a publication concerning title to the Property.  See Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *4 (D. Minn. Aug. 9, 2013) (dismissing similarly-pled slander of title claim).  Therefore, plaintiff failed to state a claim for slander of title, and dismissal is required.

### C.    Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American

Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiff's substantive claims must be dismissed under Rule 12(b)(6), "[he is] left with a remedy in search of right."   Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also Lara, 2013 WL 3088728 at, *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiff's claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

### D.   Counts IV and V: Damages Arising From Loss of Possession of the Property and Personal Property

Plaintiff's claim for loss of possession of the Property is merely a restatement of his contention that the foreclosure was improper.  Complaint, ¶¶62-64.  Because plaintiff's claims regarding the foreclosure fail, so too his claim for damages relating to loss of possession of the Property fails.

Plaintiff's claim that Freddie Mac has impermissibly retained his personal property is not factually supported and does not, therefore, meet the Rule 8 pleading standards.  The Complaint alleged that plaintiff received notice on January 12, 2012, that he needed to remove his personal possessions from the Property "no later than January 19, 2012."  Complaint, ¶39.  But plaintiff does not allege that he attempted to remove his property before that date.  In addition, plaintiff alleged that Freddie Mac's

agent told him that he would have access to his possession during a 24-hour period, but plaintiff did not allege that the attempted to remove his possessions during that period but was prevented from doing so.  Id.  Furthermore, plaintiff did not respond to Freddie Mac's arguments in favor of dismissal of Counts IV and V and, therefore, has waived any objection to those arguments.  See Graham v. Rosemount, Inc., 40 F.Supp.2d 1093, 1101 (D. Minn. 1999) (failure to respond to defendants' arguments resulted in waiver of claims), aff'd, 221 F.3d 1342 (8th Cir. 2000).  Plaintiff's claim for damages arising out of the loss of his personal property fails.

For all of these reasons, this Court recommends that plaintiff's suit be dismissed with prejudice.[7]

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

---

[7]     "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.   Such is the case here.   See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

1.  Defendant's Motion to Dismiss [Docket No. 6] be **GRANTED.**

2.  This matter be dismissed with prejudice.


Dated:  July 24, 2014                             *Janie S. Mayeron*
                                                  JANIE S. MAYERON
                                                  United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 14, 2014**, a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.